Joshua H. Haffner, Esq. WSBA #53292
jhh@haffnerlawyers.com
Alfredo Torrijos, Esq. (*pro hac vice* pending)
at@haffnerlawyers.com
Vahan Mikayelyan, Esq. (*pro hac vice* pending)
vh@haffnerlawyers.com
**HAFFNER LAW PC**
15260 Ventura Blvd., Suite 1520
Sherman Oaks, California 91403
Tel: (213) 514-5681
Fax: (213) 514-5682

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

SAMANTHA SAGE, an individual; REKA JANOSI, an individual, on behalf of themselves and all others similarly situated,

Plaintiff,

v.

WESTCHESTER FIRE INSURANCE COMPANY; INDEMNITY INSURANCE COMPANY OF NORTH AMERICA; ATLANTIC EMPLOYERS INSURANCE COMPANY; HEALTHY PAWS PET INSURANCE LLC; and DOES 1 through 10, inclusive,

Defendants.

**Case No.:**

**CLASS ACTION COMPLAINT FOR:**

**(1) BREACH OF CONTRACT;**

**(2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**

**(3) VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT; and**

**(4) VIOLATION OF NEW JERSEY'S CONSUMER FRAUD ACT.**

**DEMAND FOR TRIAL BY JURY**

Plaintiffs Samantha Sage and Reka Janosi ("Plaintiffs") bring this class action against defendants Westchester Fire Insurance Company, Indemnity Insurance Company of North America, Atlantic Employers Insurance Company, and Healthy Paws Pet Insurance LLC, and Does 1 through 10 ("Defendants"), and allege the following:

## NATURE OF THE ACTION

1. This is a class action for breach of contract, insurance bad faith, and unfair business practices against Defendants arising out of their unlawful conduct in overcharging for pet insurance sold under the brand name Healthy Paws Pet Insurance.

2. Defendants, who are part of the Chubb Insurance family of companies, offer an insurance product called the Healthy Paws Pet Insurance. The Healthy Paws policies specifically provide that monthly premiums can only be changed "to reflect changes in the costs of veterinary medicine," and that the policy term is "continuous until cancelled." Plaintiffs' Healthy Paws policies were initially issued and underwritten by Indemnity Insurance Company of North America and Atlantic Employers Insurance Company. These defendants filed documents with the Washington and New Jersey state insurance departments stating that the pet's age factor at "policy inception will not change through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy)." Although Plaintiffs and class members did not cancel their Healthy Paws Pet Policies underwritten by Defendants Indemnity Insurance Company of North America and Atlantic Employers Insurance Company, Defendants had these policies taken over, continued or rewritten under the name of Defendant Westchester Fire Insurance Company. The switch unlawfully facilitated an undisclosed, substantial increased premium cost.

3. Defendants have substantially and unlawfully increased Plaintiffs and Class members' monthly premiums, disregarding their representations, contractual promises, and rate filings. As a result of Defendants' unlawful conduct, Plaintiffs and class members have been substantially damaged, including through premium overcharges by Defendants. Plaintiffs bring this action on behalf of themselves and all others similarly

situated for compensatory and other damages, restitution, and injunctive relief.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the entire action by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of the Court. The acts and omissions complained of in this action took place in part in the State of Washington. At least one Defendant is a citizen of a state outside of Washington, and federal diversity jurisdiction exists and/or jurisdiction under the Class Action Fairness Act ("CAFA"). The class amount at issue exceeds $5,000,000 and the jurisdictional minimum of this Court under CAFA. Venue is proper because this is a class action, the acts and/or omissions complained of took place, in whole or in part within the venue of this Court.

## PARTIES

5. Plaintiff Samantha Sage was, at all relevant times and is, a resident and citizen of the State of Washington.

6. Plaintiff Reka Janosi was, at all relevant times and is, a resident and citizen of the State of New Jersey.

7. Defendant Westchester Fire Insurance Company ("Westchester") is a business entity licensed to do, and is doing, business in the States of Washington and New Jersey. Plaintiff is informed and believes, and on that basis alleges, that Defendant is, among other things, a pet insurer. Plaintiff is informed and believes, and on that basis alleges, that Defendant Westchester is the successor-in-interest to the insurance policies issued to Plaintiffs by Defendants Indemnity Insurance Company of North America, and/or Atlantic Employers Insurance Company.

8. Defendant Indemnity Insurance Company of North America ("IICNA") is a business entity licensed to do, and is doing, business in the States of Washington and New Jersey. Plaintiffs are informed and believe, and on that basis allege, that Defendant is, among other things, a pet insurer.

9. Defendant Atlantic Employers Insurance Company ("AEIC") is a business

entity licensed to do, and is doing, business in the States of Washington and/or New Jersey. Plaintiff is informed and believes, and on that basis alleges, that Defendant is, among other things, a pet insurer.

10. Defendants Westchester, IICNA, and AEIC shall collectively be referred to as "Defendant Insurers."

11. Defendant Healthy Paws Pet Insurance LLC ("Healthy Paws") is a business entity that is headquartered in Bellevue, Washington. Defendant Healthy Paws is a citizen of Washington and licensed to do, and is doing, business in the States throughout the United States. Plaintiff is informed and believes, and on that basis alleges, that Defendant is, among other things, the marketer and administrator of the pet insurance policies at issue in this action.

12. Plaintiff is informed and believes and on that basis alleges, that all Defendants are part of the Chubb Insurance group of companies.

13. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore sue such defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained. Plaintiff is informed and believe and thereon allege that each of the fictitiously named defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by the Class.

14. Plaintiff is informed and believes and thereon alleges that all defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, alter egos, partners and/or joint venturers and/or employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent authorization and ratification of their co-defendants; however, each of these allegations

are deemed "alternative" theories whenever not doing so would result in a contradiction with other allegations.

## FACTS COMMON TO ALL CAUSES OF ACTION

15. Plaintiffs were insured under Healthy Paws Pet insurance policies sold and issued by Defendants.

**The Marketing And Administration Of Healthy Paws Policies.**

16. Defendant Healthy Paws is the marketer and administrator for all pet insurance policies at issue in this action issued by the Defendant insurers. Defendant Healthy Paws operates the website www.healthypawspetinsurance.com, where it markets pet insurance. Defendant Healthy Paws acts as agent for Insurer Defendants in selling the Healthy Paws policies and making representations about them.

17. Defendant Healthy Paw marketed and represented that the pet insurance policies would be lifetime policies for Plaintiffs and class members' insured pets. Among other things, Defendants website stated, "We cover your pet from head to paw - for a lifetime."

18. Defendants represented that policy premiums would only go up slightly, and age would not be a factor. Defendant Healthy Paws misrepresented on its website's Frequently Asked Questions (FAQs) and sample policy that premiums will only "increase slightly" for all policyholders based on increased cost of veterinary care. Defendant Healthy Paws made these or similar misrepresentations consistently on its website from at least 2011 through 2018.

**Monthly Premium Policy Terms in Healthy Paws Pet Insurance Policies.**

19. Each of the policies issued by the Defendant Insurers were called Healthy Paws Pet Insurance policies. They provide coverage for medical care by veterinarians.

20. Each of the policies contained the following provision:

> MONTHLY PREMIUM: Your monthly premium is set forth on your declarations page. ***Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine***. We will notify you at least sixty (60) days in advance of such change. (Emphasis added)

21. Plaintiffs are informed and believe, and on that basis allege, that Plaintiffs and class members' Healthy Paws pet insurance policies provide on the declarations page that the Policy term will be "Continuous until Cancelled."

22. Plaintiffs are informed and believe, and on that basis allege, that Defendants breached these policy provisions in relation to Plaintiffs' and Class members' policies. Defendants breached the Healthy Paws pet insurance policies issued to Plaintiffs and class members by increasing monthly premiums based on unauthorized factors other than veterinarian care, including but not limited to, claims costs and expenses. Defendants also breached Plaintiffs' and class members' policies by purporting to place Plaintiffs and class members in a policy issued by Defendant Westchester, with undisclosed materially different premium prices, although the original policies had not cancelled.

**Defendants' Failure To Properly Apply Its Filed Rates**

23. Defendants Indemnity Insurance Company of North America, and/or Atlantic Employer's Insurance Company were the pet insurers who initially underwrote and issued the Healthy Paws Pet Insurance policies to Plaintiffs.

24. Plaintiffs are informed and believe, and on that basis allege, that Defendant Indemnity Insurance Company of North America filed its 2015 Healthy Paws Rating Manual with the Washington insurance department stating as follows:

> "The covered pets age is determined by its date of birth. . . The Pet Age Factor applied at the policy inception will not change through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy)."

25. Plaintiffs are informed and believe, and on that basis allege, that Defendant Atlantic Employers Insurance Company filed its 2015 Healthy Paws Rate Manual, on or about July 30, 2015, with New Jersey stating as follows:

> "The covered pets age is determined by its date of birth. . . The Pet Age Factor applied at the policy inception will not change through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy)."

26. Defendants Indemnity Insurance Company of North America and Atlantic Employers Insurance Company also both filed the policy form that insured Plaintiffs, stating that "Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine."

27. Beginning in approximately 2020, and continuing thereafter at various times, Defendant Westchester took over policies for Defendants Indemnity Insurance Company of North America, and/or Atlantic Employers Insurance Company.

28. Plaintiffs are informed and believe, and on that basis allege, that many of the pets currently insured by Westchester were originally underwritten by Defendants Indemnity Insurance Company of North America, and/or Atlantic Employer's Insurance Company, but were transitioned over.

29. Plaintiffs are informed and believe, and on that basis allege, that Plaintiffs' and class members' policies underwritten by Defendant Westchester, and taken over from Defendants Indemnity Insurance Company of North America, and/or Atlantic Employer's Insurance Company, are a continuation and/or rewrite of the same Healthy Paws policies covering the same pets.

30. Plaintiffs are informed and believe, and on that basis allege, that the rate filing that must be applied for Healthy Paws' policies issued by Defendants Indemnity Insurance Company of North America and/or Atlantic Employer's Insurance Company, but transitioned to Westchester, is that "[t]he Pet Age Factor applied at the policy inception will not change through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy)." Plaintiffs are informed and believe, and on that basis allege, that for all Healthy Paws policies, regardless of underwriter, the policy form stating that "Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine," must be applied.

31. Plaintiffs are informed and believe, and on that basis allege, that Defendants have failed to properly apply their filed rates to Plaintiffs and Class members, resulting in overcharges. Specifically, Defendants have increased pet age rate and/or factors, failing

to apply the filed rates that state it will not change from policy inception through the life of the pet. In addition, Defendants failed to apply the insurance policy provision that limit changes to monthly premiums to changes in the cost of veterinary care by, among other things, utilizing unauthorized factors to increase monthly premiums, as alleged herein.

32. Plaintiffs do not challenge the reasonableness of any filed rate, but assert Defendants failed to follow the filed rates and/or breached the insurance policies, as alleged herein.

**Plaintiff Sage's Experience With Healthy Paws Pet Insurance**

33. Plaintiff Sage has been insured and owned Healthy Paws pet insurance from Defendants since approximately 2016.

34. Plaintiff Sage's policy was initially issued by Indemnity Insurance Company of North America. (Attached as exhibit 1 is a true and correct copy of the Healthy Paws pet insurance policy issued by Indemnity Insurance Company.) Plaintiff is informed and believes, and on that basis alleges, that in approximately 2025 Plaintiff Sage's policy was transferred, taken over, rewritten, and/or replaced by a Healthy Paws policy issued by Westchester. (Attached as Exhibit 3 is what Plaintiff understands is a true and correct copy of the Westchester Healthy Paws policy covering Plaintiff Sage's pets.) The Healthy Paws policy, policy numbers 514462-1, 514462-2, 514462-3, covers Plaintiff's Sage's pets, Roland, Kodama, and Patchouli. Plaintiff Sage's Healthy Paws pet insurance policy or policies covering Plaintiff Sage's pets was not cancelled when it was rewritten or continued with Westchester 's name.

35. Plaintiff Sage is informed and believes, and on that basis alleges that the Westchester policy issued to Plaintiff Sage was the same or similar form as the Indemnity Insurance Company of North America policy issued to Plaintiff Sage, including the term about changing monthly premiums based on changes to veterinary care.

36. Plaintiff Sage's monthly premiums for her pets increased dramatically when Westchester took over the policy, more than changes in the cost of veterinary care and more than if the same pet age factor was used. Thus, the premium for Kodama was raised

from $171.94 to $1,284.33 in September 2025. Plaintiff Sage is now being charged an exorbitant amount to keep her Healthy Paws policy in place, in breach of contract.

**Plaintiff Janosi's Experience With Healthy Paws Pet Insurance**

37. Plaintiff Janosi has been insured and owned Healthy Paws pet insurance from Defendants since approximately 2016.

38. Plaintiff Janosi's policy was initially issued by Atlantic Employer's Insurance Company. (Attached as exhibit 1 is a true and correct copy of the Healthy Paws pet insurance policy issued by Atlantic Employer's Insurance Company.) In approximately 2020, Plaintiff Janosi's policy was transferred, taken over, rewritten, and/or replaced by Westchester. (Attached as Exhibit 3 is what Plaintiff understands is a true and correct copy of the Westchester Healthy Paws policy covering Plaintiff Janosi's pets.) The Healthy Paws policy, policy number 400472, covered Plaintiff Janosi's cats, Bobby and Juju. Plaintiff is informed and believes, and on that basis alleges, Plaintiff Janosi's Healthy Paws pet insurance policy covering Plaintiff Janosi's pets was not cancelled when it was rewritten or continued with Westchester 's name.

39. Plaintiff Janosi is informed and believes, and on that basis alleges that the Westchester policy issued to Plaintiff Janosi was the same or similar form as the Atlantic Employer's Insurance Company policy issued to Plaintiff Janosi, including the term about changing monthly premiums based on changes to veterinary care.

40. Plaintiff Janosi's monthly premiums for her pets have increased dramatically, including since Westchester took over the policy, more than changes in the cost of veterinary care and more than if the same pet age factor was used. Most recently, the premium was raised from $248.39 to $428.37 in June 2025. Plaintiff Janosi is now being charged an exorbitant amount to keep her Healthy Paws policy in place, in breach of contract.

41. The increases applied to Plaintiffs' policies breached the policies because it is more than the cost of changes to veterinary care. The increases also failed to properly apply Defendants filed rates that "[t]he Pet Age Factor applied at the policy inception will

not change through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy).

42. Each of Defendants' past and future cost of insurance overcharges of Plaintiff and the class constitutes a separate breach of contract.

43. The nature of Defendants' conduct is such that Plaintiffs and each member of the class would be unaware that Defendants were engaging in wrongdoing by charging inflated premiums. Defendants possess the actuarial information and equations underlying the computation of rates and charges for the Policies. Concealment of its conduct and/or failure to disclose its conduct to Plaintiff and the class therefore tolls the statute of limitations for Plaintiffs and proposed class members.

44. Plaintiffs and class members have complied with each and every obligation and/or condition of the policies at issue, save those that Defendants have waived, forfeited, and/or are estopped from asserting.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

45. Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly situated, and as a member of the Class(es) defined as follows:

**National Class:** All persons in the United States who currently or formerly own or were insured under a Healthy Paws pet insurance policy, the terms of which provide or provided for premium changes to reflect changes in costs of veterinary care.

**Washington Class**: All persons in Washington who currently or formerly own or were insured under a Healthy Paws pet insurance policy, the terms of which provide or provided for premium changes to reflect changes in costs of veterinary care.

**Washington Subclass**: All persons in Washington who currently or formerly own or were insured under a Healthy Paws pet insurance policy issued by Defendants Indemnity Insurance Company of North America, and taken over, rewritten or continued by Defendant Westchester, the terms of which provide or provided for

premium changes to reflect changes in costs of veterinary care.

**New Jersey Class**: All persons in Washington who currently or formerly own or were insured under a Healthy Paws pet insurance policy, the terms of which provide or provided for premium changes to reflect changes in costs of veterinary care.

**New Jersey Subclass**: All persons in New Jersey who currently or formerly own or were insured under a pet insurance policy issued by Defendant Atlantic Employer's Insurance Company, and taken over, rewritten or continued by Defendant Westchester, the terms of which provide or provided for premium changes to reflect changes in costs of veterinary care.

Plaintiffs reserve the right to amend or otherwise alter the sub-class definitions presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant or otherwise.

46. **Numerosity of the Class:** Members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class members and their addresses are known to Plaintiffs or will be known to Plaintiffs through discovery. Class members may be notified of the pendency of this action by mail, electronic mail, the Internet, or published notice.

47. **Existence of Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all members of the Class. These questions predominate over any questions affecting only individual Class members. These common legal and factual questions include:

a. Whether Defendants overcharge for premiums for the Policies at issue.

b. Whether Defendants breached the policies by using factors other than the cost of veterinary care to increase monthly premiums;

c. Whether Defendants failed to apply their filed rates that the age factor applied at the policy inception will not change through the life of the pet as long as it is

continuously insured under the policy (including any rewrite of the policy).

d. Whether Plaintiffs and class members policies were at anytime cancelled.

e. Whether Defendants failed to apply its filed policy terms to only change premiums based on increased costs of veterinary care.

f. Whether Defendant Westchester rewrote or took over the other Insurer Defendants Healthy Paws Pet Insurance Policies subject to the rate filing that the age factor applied at the policy inception will not change through the life of the pet (including for any rewrite of the policy).

g. Whether Defendants misrepresented that insurance costs would only slightly increase based on cost of veterinary care.

h. Whether Defendants manner of charging for or calculating the cost of insurance is an unfair business practice;

i. Whether Defendants improperly use unauthorized factors in calculating the cost of insurance or premiums for the Policies;

j. Whether Defendants concealed the premium increases that would result from the change in policy underwriters.

k. Whether Defendants made common misrepresentations regarding covering pets continuously for their life;

l. Whether Defendants made common misrepresentations regarding the factors considered and amount or premium changes;

m. The nature and extent of class-wide injury and the measure of damages for the injury.

48. **<u>Typicality</u>**: Plaintiffs' claims are typical of the claims of the members of the Class they represent because Plaintiffs, as policyholders of Defendants, were exposed and subjected to the same unlawful business practices as other class members by Defendants during the liability period. Plaintiffs and the members of the classes sustained the same types of damages and losses.

49. **<u>Adequacy:</u>** Plaintiffs are adequate representative of the Class they seek to

represent because their interests do not conflict with the interests of the members of the classes Plaintiffs seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend to prosecute this action vigorously. The interests of members of each Class will be fairly and adequately protected by Plaintiffs and her counsel.

50. **Superiority and Substantial Benefit:** The class action is superior to other available means for the fair and efficient adjudication of Plaintiffs and the Class members' claims. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the Class members to redress the wrongs done to them on an individual basis. Even if members of the Class themselves could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties and the court system, due to the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

51. The Class should also be certified because:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual members of the Class would create a risk of adjudication with respect to them, which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c. Defendants have acted or refused to act on grounds generally applicable to the Class, and/or the general public, thereby making appropriate final and injunctive relief with respect to the Classes as a whole.

**<u>FIRST CAUSE OF ACTION</u>**
**BREACH OF CONTRACT**
**(Against All Insurer Defendants and Does 1-10)**

52. Plaintiffs re-allege and incorporate by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

53. Plaintiffs and Class Members are owners or insureds under policies for which Defendants were paid consideration in the form of premiums. Plaintiffs, Class Members, and the policy owners or insureds faithfully performed all obligations required to be performed by them under the terms of the insurance contract Defendants issued for the benefit of Plaintiffs and Class members, except to the extent performance may have been excused by, among other things, Defendants' bad faith conduct and breach of the insurance policy

54. The Insurer Defendants, and Does 1-10, breached the terms of the insurance contract by overcharging for monthly premiums and/or the cost of insurance, including by increasing charges more than changes in the cost of veterinary care, increasing charges more than allowed if the pet age factor or rate is not changed from that used at the inception of the policy, increasing charges more than permitted even though the policies had not been cancelled, misstating the amount due to keep the policy in force, imposing a policy issued by Westchester in place of the original policy although Plaintiffs and class members had not cancelled their original policies, and by forcing Plaintiffs and Class members to institute this litigation. Defendants' breaches of contract occurred in connection with the policies alleged in this action. The premium overcharges were for the monthly premiums and/or cost of insurance.

55. As a direct, proximate and legal result of Defendants' breaeh(es) of the contract, Plaintiffs and the Class have been, and continue to be, damaged in an amount in excess of the jurisdictional limits of this Court, including but not limited to: Paying monies as a result of overcharges; loss of use of money, consequential damages including interest on monies Plaintiffs and the Class could and should have received promptly, but

which they did not receive in a timely fashion as a result of Defendant's breach of contract, and other fees, expenses and costs to be proven at trial.

56. Plaintiff and the Class have also sustained other losses as a direct, proximate and legal result of Defendant's conduct, in an amount to be proven at trial.

**<u>SECOND CAUSE OF ACTION</u>**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against All Insurer Defendants and Does 1-10)**

57. Plaintiffs re-allege and incorporate by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

58. The insurance policies identified in this action contained an implied covenant of good faith and fair dealing, whereby Insurer Defendants, and Does 1 through 10, agreed to perform their obligations under the policies in good faith, to deal fairly with Plaintiffs and Class members, and not to unreasonably deprive Plaintiffs and the Class of the benefits due under the insurance policy.

59. Insurer Defendants tortiously breached the implied covenant of good faith and fair dealing arising from the insurance contract by unreasonably overcharging for the Policies.

60. Insurer Defendants continue to engage in unlawful, bad faith insurance practices. Such bad faith conduct constitutes a continuing tort which is causing Plaintiff and Class members continued damages.

61. Insurer Defendants engaged and continues to engage in a course of conduct to further its own economic interests in violation of its obligations to Plaintiff. This conduct includes, but is not limited to the conduct alleged in this complaint and the following:

A. Wrongfully overcharging for insurance;

B. Improperly using claims, expense and/or other unauthorized factors in cost of insurance rates and/or premium charges;

C. Forcing Plaintiff and Class members to retain counsel;

D. Failing to advise Plaintiff and Class members of applicable policy benefits;

E. Placing its own interests above the interests of Plaintiff.

F. Failing to disclose and/or concealing the premium increase that would result from changing underwriters for the Healthy Paws Pet Insurance policy;

G. Unreasonably interpreting the Policy in a manner favorable to Defendant and unfavorable to Plaintiff.

H. Plaintiff is informed, believes and thereon alleges, that Defendant has breached its duty of good faith and fair dealing owed to Plaintiff and Class members by other acts or omissions of which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

62. Without any reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, Insurer Defendants, and each of them, have failed and refused to act in good faith or act fairly towards Plaintiffs and Class members, and Defendants have, in bad faith, failed and refused to perform their obligations under the insurance policies. Insurer Defendants' conduct described herein constitutes a bad faith pattern and practice.

63. As a direct, proximate and legal result of said breaches of the covenant of good faith and fair dealing by Insurer Defendants, Plaintiffs and Class members have been, and continue to be, damaged, in an amount according to proof. Plaintiffs and Class members have been required to expend attorney's fees and costs in pursuing relief to which they are entitled as a matter of law.

64. As a direct, proximate and legal result of the wrongful conduct of Insurer Defendants, Plaintiff and Class members have sustained other economic damages, as set forth above, and other damages in an amount to be proven at trial.

65. On the basis of all of the facts alleged hereinabove, Defendants' conduct and

actions were despicable, and were done maliciously, oppressively and/or fraudulently, with a willful and conscious disregard of Plaintiffs' and Class members' rights, thereby subjecting Plaintiff and Class members to unjust losses, hardship, and distress, entitling Plaintiffs and Class members to punitive damages. Defendants' officers, directors and managing agents were personally informed and involved in the decision-making process with respect to the misconduct alleged herein and to be proven at trial.

## <u>THIRD CAUSE OF ACTION</u>
## VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT
## RCW § 19.86, et seq.
## (Against All Defendants)

66. Plaintiffs re-allege, and incorporate by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

67. Washington's Consumer Protection Act makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . ." RCW 19.86.020.

68. Defendants engaged in misleading, false, unfair or deceptive acts or practices that violated the Washington Consumer Protection Act through both its affirmative misrepresentations and material omissions, on the Healthy Paws website and in its sample policies and actual policies, as discussed above. Specifically, Defendants made misrepresentations regarding covering pets continuously for their life, and the factors considered and amount of future premium changes, as alleged herein.

69. Defendants did not disclose when selling Healthy Paws policies that premiums for insurance policies it sells would increase based on new pet age factors and/or Defendants' claims history, and instead stated that premiums only would increase for all policyholders based on the rising cost of veterinary care.

70. Defendants intentionally and knowingly engaged in these unlawful practices. Defendants knew premiums would increase based on a pet's age factors other than the cost of veterinary medicine and misled Plaintiffs and other class members into

signing up for policies based on these misrepresentations and omissions.

71. Plaintiffs reasonably relied on Defendants misrepresentations and omissions in purchasing pet insurance for their pets, as alleged herein.

72. Defendants profited from their misleading practices including, but not limited to, overcharging for pet insurance premiums.

73. Defendant's' false, misleading, unfair, and/or deceptive acts and practices caused Plaintiffs and the Class injury because they paid more for their policies than they should have paid.

74. Plaintiffs and the Class have been injured by Defendant's' violations in an amount to be determined at trial. Plaintiffs seek all damages available under CPA § 19.86.090, including actual damages, costs (including reasonable attorneys' fees), and treble damages.

75. Defendant's' conduct affects the public interest as numerous consumers purchase pet insurance and rely on companies' representations, including Defendant's' representations, concerning the price of the policies. Plaintiffs, the Class, consumers, and the public have a strong interest in ensuring that companies truthfully disclose the factors they consider in setting monthly premiums. Defendant's' false, misleading, unfair, and/or deceptive acts affected many consumers by causing them to overpay for Healthy Paws' policies.

76. Plaintiffs and Class members are entitled to relief including, but not limited to, actual damages, treble damages, injunctive relief, restitution, and/or attorney's fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF NEW JERSEY'S CONSUMER FRAUD ACT**
**N.J.S.A. 56:8-1 et seq.**
**(Against Defendants Healthy Paws, Westchester, AEIC and Does 1-10)**

77. Plaintiffs re-allege, and incorporate by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

78. The Consumer Fraud Act protects consumers against unfair, unconscionable and/or deceptive business practices. N.J.S.A. 56:8-2.

79. Defendant's' policies and/or practices described in this Complaint constitute unfair, unconscionable and/or deceptive trade or business practices. Defendants engages in such conduct as a general business practice, uniformly and as a matter of policy, misrepresenting and omitting material information regarding pricing and continuous coverage.

80. Defendants made misrepresentations regarding covering pets continuously for their life, and the factors considered and amount of future premium changes, as alleged herein.

81. Defendants did not disclose when selling Healthy Paws policies that premiums for insurance policies it sells would increase based on new pet age factors and/or Defendants' claims history, and instead stated that premiums only would increase for all policyholders based on the cost of veterinary care.

82. Defendants intentionally and knowingly engaged in these unlawful practices. Defendants knew premiums would increase based on a pet's age factors other than the cost of veterinary medicine, and other unauthorized factors, and misled Plaintiffs and other class members into signing up for policies based on these misrepresentations and omissions.

83. Plaintiff Janosi reasonably relied on Defendants misrepresentations and omissions in purchasing pet insurance for their pets, as alleged herein.

84. Defendant's' false, misleading, unfair, and/or deceptive acts and/or practices caused Plaintiffs and the Class injury because they paid more for their policies than they should have paid.

85. Plaintiff Janosi and Class members are entitled to relief including, but not limited to, actual damages, treble damages, injunctive relief, restitution, and/or attorney's fees and costs.

## PRAYER

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated and also on behalf of the general public, pray for judgment against Defendants as follows:

A. An order that this action may proceed and be maintained as a class action
B. For all compensatory, special, consequential, incidental, statutory, and general damages;
C. For punitive damages;
D. For restitution and/or disgorgement of ill-gotten gains;
E. An order enjoining Defendants from further unfair or unlawful business practices;
F. General, special and consequential damages, to the extent allowed by law;
G. Prejudgment interest at the maximum legal rate;
H. Reasonable attorneys' fees;
I. Accounting of Defendants' records for the liability period;
J. Costs of suit; and
K. Such other relief as the Court may deem just and proper.

DATED: August 27, 2025 **HAFFNER LAW PC**

By: <u>*/s/ Joshua H. Haffner*</u>
Joshua H. Haffner
Alfredo Torrijos (*pro hac vice* pending)
Vahan Mikayelyan (*pro hac vice* pending)
Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for herself and the Class members on all claims so triable.

DATED: August 27, 2025

**HAFFNER LAW PC**

By: <u>*/s/ Joshua H. Haffner*</u>
Joshua H. Haffner
Alfredo Torrijos (*pro hac vice* pending)
Vahan Mikayelyan (*pro hac vice* pending)
Attorneys for Plaintiffs

# EXHIBIT 1

healthypaws® PET INSURANCE

Indemnity Insurance Company of North America

# Pet Health Insurance Policy

Please read your Pet Health Insurance Policy carefully to determine the parties' rights and duties and what is and is not covered. Some provisions in the policy limit or restrict coverage.

Throughout this policy, the words **you** and **your,** refer to the policyholder (**Pet Parent**) shown in the Declarations Page.

The words **we, us and our,** refer to the company providing this insurance.

Words and phrases that appear in **bold type** have special meaning found in Section V. Definitions.

## I. INSURING AGREEMENT

**We** rely on the statements **you** made in the application. Upon **your** payment of the premiums when due, **we** will provide **coverage** as specifically described in this **policy** for **your pet** as shown on the **declarations page**.

Benefits are subject to terms, conditions, limitations and exclusions of this **policy** and to **your** responsibility for the **coinsurance and deductible. Coverage** is in effect at the time and date shown on the **declarations page** subject to the waiting periods described in **II. EXCLUSIONS & LIMITATIONS 1) b,.1) c.** and **1) d.**

1) **WE COVER**: Reimbursement of the cost incurred by **you** for **medically necessary veterinary treatment** recommended by **your veterinarian** for **conditions** covered by this **policy.** These costs will be covered when **your pet:**

   a. develops an **illness,** or

   b. has an **injury** as a result of an **accident;**

   during the **coverage term**.

   This **policy** shall not cover amounts charged by the treating veterinary clinic that are greater than the treating veterinary clinic's standard or published charges.

2) **LIFETIME LIMIT**: The maximum amount **you** may claim while **coverage** is in force with respect to any one **pet** for **veterinary treatment** over the lifetime of that **pet.** The Lifetime Limit is shown on the **declarations page**. Subject to the maximum lifetime limit, there are no limits per claim or per year.

3) **COINSURANCE**: The portion **you** are required to pay for **your pet's veterinary treatment. Your pet's coinsurance** amount is shown on the **pet schedule** of the **declarations page**.

4) **DEDUCTIBLE**: **Your pet's deductible** is shown on the **pet schedule** of the **declarations page. Your pet's deductible** shall apply once per **coverage term**.

5) **MONTHLY PREMIUM**: **Your** monthly premium is set forth on **your declarations page**. Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine. **We** will notify **you** at least sixty (60) days in advance of such change.

6) **CHANGES TO YOUR COVERAGE**: **Your coverage**, **coinsurance, and deductible** will not change due to **your pet's** claims experience.

# II. EXCLUSIONS & LIMITATIONS

## 1) GENERAL EXCLUSIONS

**We** do not cover:

a. **Veterinary examination fees**.

b. **Injury** from an **accident** that occurs within the first fifteen (15) days following the **pet policy effective date.**

c. **Illness** that occurs or recurs within the first fifteen (15) days following the **pet policy effective date**.

d. **Illness** related to hip dysplasia that occurs or recurs within the first twelve (12) months following the **pet policy effective date.**

## 2) PRE-EXISTING CONDITIONS

**We** do not cover **pre-existing conditions.**

**Pre-existing conditions** means:

a. **illness** or the recurrence of any **illness** or **condition** which first occurred or displayed any signs and/or symptoms consistent with the stated **illness** or **condition** prior to the **pet policy effective date**;

b. an **injury** or recurrence of an **injury** that occurred prior to the **pet policy effective date**; or

c. any **condition** or complication resulting from an **illness** or **injury** that occurred prior to the **pet policy effective date.**

## 3) PREVENTIVE CARE EXCLUSIONS

**We** do not cover:

a. **Spaying** and **neutering**.

b. Preventive healthcare including **vaccinations** or titer test, flea control, heartworm **medication**, de-worming, nail trim, and grooming.

c. Parasite control including but not limited to internal and external parasites for which readily available prophylactic treatments are available.

d. **Dental health care**, however if injury to teeth is caused by an accident, **we** do cover the cost of extraction and/or reconstruction of damaged teeth.

e. Anal gland expression.

## 4) OTHER EXCLUSIONS

**We** do not reimburse the costs, fees or expenses associated with:

a. **Injury** or **illness** due to any intentional, neglectful or preventable act, including organized dog fighting, by **you** or a member of **your** household;

b. Elective procedures, cosmetic procedures, preventive procedures including but not limited to:

   1. tail docking;
   2. ear cropping;
   3. de-clawing;
   4. micro-chipping;
   5. dew claw removal; or

6. ear cleaning;

c. Boarding or transport expenses;

d. **Conditions** arising from a specific activity if the same or a similar activity occurred prior to the **pet policy effective date** and displayed the propensity for the activity to recur and cause **injury** or **illness** to **your pet**;

e. Pre-existing cruciate ligament problems to one leg as respects the cost of future treatment for problems of the other leg;

f. Diseases preventable by vaccines and prophylactic **medications** (such as heartworm, lice, internal parasites and fleas);

g. Complications of **conditions** excluded or limited by this **policy**;

h. Abnormalities where **clinical symptoms** were apparent prior to the **pet policy effective date**. This includes **conditions** that are detectable by a routine physical exam by **your veterinarian**;

i. Claims in any way arising from the lack of use and/or implementation of preventive healthcare products and/or methods when such products and/or methods would be in accordance with generally accepted veterinary standards. Routine healthcare includes: **vaccinations**, flea control, heartworm **medication**, de-worming, dental care, ear plucking, grooming, and prudent regular care;

j. Special diets, **pet** foods, vitamins, supplements, grooming, nail trims, shampoo and bathing (including medicated baths);

k. Any claim for loss from a nuclear incident as defined in the Nuclear Liability Act, nuclear explosion or contamination by radioactive material;

l. **Conditions** arising from any specific activity if the same or similar activity occurs after **you** have received written notice from **us** regarding the specific activity;

m. Experimental or investigational treatment or medicine;

n. Breeding or **conditions** relating to breeding, whelping, and queening;

o. **Diagnostic tests** for **conditions** excluded by this **policy**;

p. **Diagnostic tests** due to complications of **conditions** excluded or limited by this **policy**;

q. **Conditions** caused by war or war activities whether war be declared or not. War activities include civil war, insurrection, rebellion, or revolution or any act or **condition** incident of any of the foregoing;

r. Feeding, housing or exercise;

s. Behavioral modification, training, therapy or **medications** for behavioral modification.

**5) LIMITATIONS**

a. A **pet** less than six (6) years of age on the date of enrollment must have undergone a complete **clinical examination.** The exam must have taken place either in the twelve (12) months prior to the **pet policy effective date**, or within fifteen (15) days following the **pet policy effective date**. A **pet** six (6) years of age or greater on the date of enrollment must have undergone a complete **clinical examination** within thirty (30) days prior to the **pet policy effective date,** or within fifteen (15) days following the **pet policy effective date**. **Your** failure to submit **your pet** to a complete **clinical examination** may void the **policy**. If the **policy** is voided, the **policy** premium will be refunded.

b. For **pets** six (6) years of age or greater on the date of enrollment, no **coverage** shall apply for **illness** related to hip dysplasia.

c. For **working pets**, no **coverage** shall apply for any **condition** resulting from activities related to racing, breeding, law enforcement, guarding or for any commercial use.

d. **We** will not make any payments for any claims for which **you** are entitled to be paid under any other insurance except for any additional sum which is payable over and above such other insurance.

## III. GENERAL CONDITIONS

1) Premium is payable monthly by Direct Debit or by charge to **your** credit card, according to the option selected by **you** on the application. This **policy** is continued until cancelled, and will renew automatically each month as long as premium payments are current. When **you** have not paid the premium, **we** may cancel this **policy. We** will let **you** know at least twenty (20) days before the date cancellation takes effect. No coverage will be provided for any claim with a date of **veterinary treatment** between the premium due date and the cancellation date, unless the premium payments are current.

2) **You** may cancel **your policy** by notifying **us** in writing via regular mail, fax or email at least fourteen (14) days in advance of **your** next premium payment.

3) **You** must be the owner of the **pet(s)**. If the **pet** owner dies, becomes unable to care for the insured **pet(s)**, or passes the ownership of the insured **pet(s)**, the **coverage** will continue without interruption, if approved in writing by **us**, subject to all other terms and conditions of this **policy**.

4) A **pet** is covered under this **policy** only while the **pet** is in the United States of America, or temporarily away in Canada.

5) **You** must agree to implement all reasonable means possible in the care and protection of **your pet**. **You** further agree to protect the **pet** from aggravation and/or recurrence of the **injury** and/or **illness** after occurrence.

6) This **coverage** is not transferable to other **pets**. All new **pets** are subject to a new application and your monthly payment will increase.

7) **You** are entitled to increase **your pet's deductible** level and/or increase **your pet's coinsurance** amount at any time. This request must be made in writing and will become effective the month following approval by **us**. **You** may apply to lower **your pet's deductible** level and/or decrease **your pet's coinsurance** amount provided that **your pet** has not previously filed a claim with **us**. This request must be in writing and will become effective the month following approval by **us**.

8) Notice of loss must be given by either **you** or **your** agent.

9) The loss is payable within sixty days after completion of the claim form, unless applicable state law provides for a shorter period.

10) In order to process a claim, **you** must allow **us** to contact **your** present and previous **veterinarian(s)** and provide **us** with the necessary authority to obtain any information **we** may require. In the event information relating to the history of the **pet** is missing or incomplete, the claim will not be processed. **You** must also agree to submit the **pet** to examination, if **we** require, by a **veterinarian we** select.

11) In the event of any disagreement between **you** and **us** with regards to a claim, the matter will be referred to **our veterinarian**. If the matter is not resolved, an independent third party **veterinarian** shall be appointed by **us**. This independent third party **veterinarian's** decision shall be final and binding on all parties.

12) Every action or proceeding against **us** for the recovery of any claim under or by virtue of this contract is absolutely barred unless commenced within one year after the loss or damage occurs or unless state law requires a longer period.

## IV. ADDITIONAL CONDITIONS

1) **MISREPRESENTATION AND FRAUD** – This **policy** will be voided if **you** have concealed or misrepresented any material fact or circumstance concerning this insurance or the **pet(s)** covered. **We** do not provide **coverage**, for an insured who has intentionally concealed or misrepresented any such facts or circumstances before or after a loss.

**2) CANCELLATION**

a. **We** may cancel this **policy** if **we** do not receive a monthly premium from **you** when the premium is due. In such a case a written notice will be sent to **you** at **your** last email address known to **us**. We will provide at least (20) days

notice of our intent to cancel. The notice will be in accordance with the provisions of **III. GENERAL CONDITIONS** 1). Otherwise, **we** may cancel this policy by providing **you** at least ninety (90) days written notice.

b. **You** may cancel this **policy** at any time by notifying **us** in writing via regular mail, fax or email. This is in accordance with the provisions of III. **GENERAL CONDITIONS** 2).

3) **STATE LAW** – When this **policy's** provisions are in conflict with the statutes of the state in which this **policy** is issued, the provisions are amended to conform to such statutes.

4) **ENTIRE CONTRACT** – This **policy**, the **Declarations Page**, and any attached endorsement contain all the agreements between **you** and **us**.

5) **FREE LOOK PERIOD** - If **you** are not satisfied with this **policy** within thirty (30) days of the **Policy Effective Date**, **you** may cancel **your** insurance. **We** will refund **your** premium in full, as long as **you** have not submitted a claim.

## V. DEFINITIONS

The following defined words or phrases in the **policy** are printed in bold type and have the following meanings, unless a different meaning is described in a particular coverage or endorsement.

1) **Accident.** An unexpected and unintended event causing **injury** to **your pet**.

2) **Clinical Examination.** A thorough examination performed by a licensed and registered **veterinarian** encompassing all body systems of the **pet**. Examination can also be referred to as "full physical, physical consultation, full examination or veterinary examination."

3) **Clinical Symptoms.** Any manifested anomaly in, or deviation from the regular healthy state or function of a **pet**, including behavioral traits. Symptoms include any anomaly that is readily detectible by a thorough and complete **clinical examination**.

4) **Coinsurance. Your** portion of the cost of insured **veterinary treatment for your pet** before any **deductible** is applied. **Your pet's coinsurance** amount is shown as "Your Share" on the **pet schedule** of the **declarations page**.

5) **Condition.** Any manifestations of **clinical symptoms** consistent with a diagnosis or diagnoses, regardless of the number of incidents or areas of the body affected.

6) **Coverage.** The insurance protection described in this **policy** form and on the **declarations page.**

7) **Coverage Term.** A twelve (12) month period that begins with the effective date of **coverage** and continues for each twelve (12) month period thereafter.

8) **Declarations Page.** A written document comprising part of this **policy**, which identifies the insured, the **policy** number, and the insured **pet schedule** with the **coverage** options selected and Lifetime Limit provided.

9) **Deductible.** The amount **you** must first pay with respect to the cost of insured **veterinary treatment** for **your pet** after **your pet's coinsurance** portion has been applied.

10) **Dental Health Care.** The regular care required to maintain dental hygiene for **your pet.** This includes brushing, scaling, polishing, extractions and reconstructions.

11) **Diagnostic Tests.** Tests used to determine the overall health of **your pet. Diagnostic tests** can be used as a way to detect certain abnormalities. It can also validate the current health of **your pet**, or help to evaluate an older **pet** more thoroughly before problems surface.

12) **Hospitalization.** Charges for boarding **your pet** at a veterinary clinic as required by your **veterinarian** to deliver nursing care, administer **medication** to or monitor **your pet**.

13) **Illness.** Sickness, disease and any changes to **your pet's** normal healthy state; any **condition** other than **your pet's** normal healthy state.

14) **Injury(ies).** Physical harm or damage to **your pet** arising from normal activity or an **accident**.

15) **Medically Necessary.** Medical services, supplies or treatments provided by a **veterinarian** to treat covered **pets** which are:

a. consistent with symptoms or diagnosis;

b. appropriate and meet generally accepted veterinary practice standards;

c. not primarily for the convenience of the **pet parent**, **your veterinarian** or other providers; and

d. consistent with the most appropriate supply or level of services which can safely be provided to the **pet**.

16) **Medication.** Any veterinary recommended **medications** prescribed by **your veterinarian** and approved by the Food and Drug Administration (FDA) for veterinary use.

17) **Neutering.** Orchidectomy, or surgical removal of the testicles.

18) **Pet** or **Pets.** A domestic cat or dog that is owned for companionship or as a help dog, not owned for commercial reasons. Commercial reasons include, but are not limited to, a **racing dog**.

19) **Pet Parent.** The owner of the **pet,** including owner's spouse or partner.

20) **Pet Policy Effective Date.** 12:01 a.m. of the day following the date you enroll **your pet**, as shown on the **pet schedule** of the **declarations page**, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

21) **Pet Schedule.** The table shown on the **declarations page** that identifies the **pet policy effective date**, policy number and **coverage** options related to a specific insured **pet.**

22) **Policy.** The terms and conditions and most recent **declarations page** that includes any endorsements that apply.

23) **Policy Effective Date.** 12:01 a.m. of the day following the date Shown in the Declarations, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

24) **Pre-existing conditions** means:

a. **illness** or the recurrence of any **illness** or **condition** which first occurred or displayed any signs and/or symptoms consistent with the stated **illness** or **condition** prior to the **pet policy effective date**;

b. an **injury** or recurrence of an **injury** that occurred prior to the **pet policy effective date**; or

c. any **condition** or complication resulting from an **illness** or **injury** that occurred prior to the **pet policy effective date.**

25) **Racing Dog.** A dog, which is owned and maintained for the purpose of competing in organized races or speed contests.

26) **Spaying.** Ovariohysterectomy, or resection of the ovaries and uterus.

27) **Supplies.** Any item that is **medically necessary**, as determined by the **veterinarian**, that is safe and effective for its intended use, and that omission would adversely affect the insured **pet**.

28) **Surgery (ies).** Procedure(s) that treat diseases or **injuries** by operative manual and instrumental treatment.

29) **Vaccination.** The administration of an industry-recognized commercial vaccine by a registered licensed **veterinarian**. The vaccine must be in accordance with the manufacturer's recommendations, following a complete **clinical examination,** for prevention of disease.

30) **Veterinarian.** A properly licensed and registered **veterinarian** in active practice in the area where **your pet** is treated or examined. **Veterinarian** shall not include **you** or a member of **your** immediate family.

31) **Veterinary Examinations Fees.** Fees charged for the professional opinion of a **veterinarian**. Also referred to as consultation, examination, referral, and recheck fees.

32) **Veterinary Treatment** means:

a. X-rays;

b. Laboratory and **diagnostic tests**;

c. **Medication**;

d. **Surgeries;**

e. **Supplies;**

f. **Hospitalization;**

g. Euthanasia; and

h. Nursing care;

provided by a licensed **veterinarian** and their staff under direct supervision.

33) **Working Pets.** Any **pet** involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or for other commercial use.

34) **Your Pet.** The dog or cat named in the **pet schedule** of the **declarations page**.

# EXHIBIT 2

healthypaws® PET INSURANCE Atlantic Employers Insurance Company

# Pet Health Insurance Policy

Please read your Pet Health Insurance Policy carefully to determine the parties' rights and duties and what is and is not covered. Some provisions in the policy limit or restrict coverage.

Throughout this policy, the words **you** and **your,** refer to the policyholder (**Pet Parent**) shown in the Declarations Page.

The words **we, us and our,** refer to the company providing this insurance.

Words and phrases that appear in **bold type** have special meaning found in Section V. Definitions.

## I. INSURING AGREEMENT

**We** rely on the statements **you** made in the application. Upon **your** payment of the premiums when due, **we** will provide **coverage** as specifically described in this **policy** for **your pet** as shown on the **declarations page**.

Benefits are subject to terms, conditions, limitations and exclusions of this **policy** and to **your** responsibility for the **coinsurance and deductible. Coverage** is in effect at the time and date shown on the **declarations page** subject to the waiting periods described in **II. EXCLUSIONS & LIMITATIONS 1) b,.1) c.** and **1) d.**

1) **WE COVER**: Reimbursement of the cost incurred by **you** for **medically necessary veterinary treatment** recommended by **your veterinarian** for **conditions** covered by this **policy.** These costs will be covered when **your pet:**

   a. develops an **illness,** or

   b. has an **injury** as a result of an **accident;**

   during the **coverage term**.

   This **policy** shall not cover amounts charged by the treating veterinary clinic that are greater than the treating veterinary clinic's standard or published charges.

2) **LIFETIME LIMIT**: The maximum amount **you** may claim while **coverage** is in force with respect to any one **pet** for **veterinary treatment** over the lifetime of that **pet.** The Lifetime Limit is shown on the **declarations page**. Subject to the maximum lifetime limit, there are no limits per claim or per year.

3) **COINSURANCE**: The portion **you** are required to pay for **your pet's veterinary treatment. Your pet's coinsurance** amount is shown on the **pet schedule** of the **declarations page**.

4) **DEDUCTIBLE**: **Your pet's deductible** is shown on the **pet schedule** of the **declarations page. Your pet's deductible** shall apply once per **coverage term**.

5) **MONTHLY PREMIUM**: **Your** monthly premium is set forth on **your declarations page**. Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine. **We** will notify **you** at least sixty (60) days in advance of such change.

6) **CHANGES TO YOUR COVERAGE**: **Your coverage, coinsurance, and deductible** will not change due to **your pet's** claims experience.

## II. EXCLUSIONS & LIMITATIONS

1) **GENERAL EXCLUSIONS**

**We** do not cover:

a. **Veterinary examination fees**.

b. **Injury** from an **accident** that occurs within the first fifteen (15) days following the **pet policy effective date.**

c. **Illness** that occurs or recurs within the first fifteen (15) days following the **pet policy effective date**.

d. **Illness** related to hip dysplasia that occurs or recurs within the first twelve (12) months following the **pet policy effective date.**

2) **PRE-EXISTING CONDITIONS**

**We** do not cover **pre-existing conditions.**

**Pre-existing conditions** means:

a. **illness** or the recurrence of any **illness** or **condition** which first occurred or displayed any signs and/or symptoms consistent with the stated **illness** or **condition** prior to the **pet policy effective date**;

b. an **injury** or recurrence of an **injury** that occurred prior to the **pet policy effective date**; or

c. any **condition** or complication resulting from an **illness** or **injury** that occurred prior to the **pet policy effective date.**

3) **PREVENTIVE CARE EXCLUSIONS**

**We** do not cover:

a. **Spaying** and **neutering**.

b. Preventive healthcare including **vaccinations** or titer test, flea control, heartworm **medication**, de-worming, nail trim, and grooming.

c. Parasite control including but not limited to internal and external parasites for which readily available prophylactic treatments are available.

d. **Dental health care**, however if injury to teeth is caused by an accident, **we** do cover the cost of extraction and/or reconstruction of damaged teeth.

e. Anal gland expression.

4) **OTHER EXCLUSIONS**

**We** do not reimburse the costs, fees or expenses associated with:

a. **Injury** or **illness** due to any intentional, neglectful or preventable act, including organized dog fighting, by **you** or a member of **your** household;

b. Elective procedures, cosmetic procedures, preventive procedures including but not limited to:

   1. tail docking;
   2. ear cropping;
   3. de-clawing;
   4. micro-chipping;
   5. dew claw removal; or
   6. ear cleaning;

c. Boarding or transport expenses;

d. **Conditions** arising from a specific activity if the same or a similar activity occurred prior to the **pet policy effective date** and displayed the propensity for the activity to recur and cause **injury** or **illness** to **your pet**;

e. Pre-existing cruciate ligament problems to one leg as respects the cost of future treatment for problems of the other leg;

f. Diseases preventable by vaccines and prophylactic **medications** (such as heartworm, lice, internal parasites and fleas);

g. Complications of **conditions** excluded or limited by this **policy**;

h. Abnormalities where **clinical symptoms** were apparent prior to the **pet policy effective date**. This includes **conditions** that are detectable by a routine physical exam by **your veterinarian**;

i. Claims in any way arising from the lack of use and/or implementation of preventive healthcare products and/or methods when such products and/or methods would be in accordance with generally accepted veterinary standards. Routine healthcare includes: **vaccinations**, flea control, heartworm **medication**, de-worming, dental care, ear plucking, grooming, and prudent regular care;

j. Special diets, **pet** foods, vitamins, supplements, grooming, nail trims, shampoo and bathing (including medicated baths);

k. Any claim for loss from a nuclear incident as defined in the Nuclear Liability Act, nuclear explosion or contamination by radioactive material;

l. **Conditions** arising from any specific activity if the same or similar activity occurs after **you** have received written notice from **us** regarding the specific activity;

m. Experimental or investigational treatment or medicine;

n. Breeding or **conditions** relating to breeding, whelping, and queening;

o. **Diagnostic tests** for **conditions** excluded by this **policy**;

p. **Diagnostic tests** due to complications of **conditions** excluded or limited by this **policy**;

q. **Conditions** caused by war or war activities whether war be declared or not. War activities include civil war, insurrection, rebellion, or revolution or any act or **condition** incident of any of the foregoing;

r. Feeding, housing or exercise;

s. Behavioral modification, training, therapy or **medications** for behavioral modification.

**5) LIMITATIONS**

a. A **pet** less than six (6) years of age on the date of enrollment must have undergone a complete **clinical examination.** The exam must have taken place either in the twelve (12) months prior to the **pet policy effective date**, or within fifteen (15) days following the **pet policy effective date**. A **pet** six (6) years of age or greater on the date of enrollment must have undergone a complete **clinical examination** within thirty (30) days prior to the **pet policy effective date,** or within fifteen (15) days following the **pet policy effective date**. **Your** failure to submit **your pet** to a complete **clinical examination** may void the **policy**. If the **policy** is voided, the **policy** premium will be refunded.

b. For **pets** six (6) years of age or greater on the date of enrollment, no **coverage** shall apply for **illness** related to hip dysplasia.

c. For **working pets**, no **coverage** shall apply for any **condition** resulting from activities related to racing, breeding, law enforcement, guarding or for any commercial use.

d. **We** will not make any payments for any claims for which **you** are entitled to be paid under any other insurance except for any additional sum which is payable over and above such other insurance.

## III. GENERAL CONDITIONS

1) Premium is payable monthly by Direct Debit or by charge to **your** credit card, according to the option selected by **you** on the application. This **policy** is continued until cancelled, and will renew automatically each month as long as premium payments are current. When **you** have not paid the premium, **we** may cancel this **policy. We** will let **you** know at least twenty (20) days before the date cancellation takes effect. No coverage will be provided for any claim with a date of **veterinary treatment** between the premium due date and the cancellation date, unless the premium payments are current.
2) **You** may cancel **your policy** by notifying **us** in writing via regular mail, fax or email at least fourteen (14) days in advance of **your** next premium payment.
3) **You** must be the owner of the **pet(s)**. If the **pet** owner dies, becomes unable to care for the insured **pet(s)**, or passes the ownership of the insured **pet(s)**, the **coverage** will continue without interruption, if approved in writing by **us**, subject to all other terms and conditions of this **policy**.
4) A **pet** is covered under this **policy** only while the **pet** is in the United States of America, or temporarily away in Canada.
5) **You** must agree to implement all reasonable means possible in the care and protection of **your pet. You** further agree to protect the **pet** from aggravation and/or recurrence of the **injury** and/or **illness** after occurrence.
6) This **coverage** is not transferable to other **pets**. All new **pets** are subject to a new application and your monthly payment will increase.
7) **You** are entitled to increase **your pet's deductible** level and/or increase **your pet's coinsurance** amount at any time. This request must be made in writing and will become effective the month following approval by **us**. **You** may apply to lower **your pet's deductible** level and/or decrease **your pet's coinsurance** amount provided that **your pet** has not previously filed a claim with **us**. This request must be in writing and will become effective the month following approval by **us**.
8) Notice of loss must be given by either **you** or **your** agent.
9) The loss is payable within sixty days after completion of the claim form, unless applicable state law provides for a shorter period.
10) In order to process a claim, **you** must allow **us** to contact **your** present and previous **veterinarian(s)** and provide **us** with the necessary authority to obtain any information **we** may require. In the event information relating to the history of the **pet** is missing or incomplete, the claim will not be processed. **You** must also agree to submit the **pet** to examination, if **we** require, by a **veterinarian we** select.
11) In the event of any disagreement between **you** and **us** with regards to a claim, the matter will be referred to **our veterinarian**. If the matter is not resolved, an independent third party **veterinarian** shall be appointed by **us**. This independent third party **veterinarian's** decision shall be final and binding on all parties.
12) Every action or proceeding against **us** for the recovery of any claim under or by virtue of this contract is absolutely barred unless commenced within one year after the loss or damage occurs or unless state law requires a longer period.

## IV. ADDITIONAL CONDITIONS

1) **MISREPRESENTATION AND FRAUD** – This **policy** will be voided if **you** have concealed or misrepresented any material fact or circumstance concerning this insurance or the **pet(s)** covered. **We** do not provide **coverage**, for an insured who has intentionally concealed or misrepresented any such facts or circumstances before or after a loss.
2) **CANCELLATION**

   a. **We** may cancel this **policy** if **we** do not receive a monthly premium from **you** when the premium is due. In such a case a written notice will be sent to **you** at **your** last email address known to **us**. We will provide at least (20) days notice of our intent to cancel. The notice will be in accordance with the provisions of **III. GENERAL CONDITIONS** 1). Otherwise, **we** may cancel this policy by providing **you** at least ninety (90) days written notice.

b. **You** may cancel this **policy** at any time by notifying **us** in writing via regular mail, fax or email. This is in accordance with the provisions of III. **GENERAL CONDITIONS** 2).

3) **STATE LAW** – When this **policy's** provisions are in conflict with the statutes of the state in which this **policy** is issued, the provisions are amended to conform to such statutes.

4) **ENTIRE CONTRACT** – This **policy**, the **Declarations Page**, and any attached endorsement contain all the agreements between **you** and **us**.

5) **FREE LOOK PERIOD** - If **you** are not satisfied with this **policy** within thirty (30) days of the **Policy Effective Date**, **you** may cancel **your** insurance. **We** will refund **your** premium in full, as long as **you** have not submitted a claim.

## V. DEFINITIONS

The following defined words or phrases in the **policy** are printed in bold type and have the following meanings, unless a different meaning is described in a particular coverage or endorsement.

1) **Accident.** An unexpected and unintended event causing **injury** to **your pet**.

2) **Clinical Examination.** A thorough examination performed by a licensed and registered **veterinarian** encompassing all body systems of the **pet**. Examination can also be referred to as "full physical, physical consultation, full examination or veterinary examination."

3) **Clinical Symptoms.** Any manifested anomaly in, or deviation from the regular healthy state or function of a **pet**, including behavioral traits. Symptoms include any anomaly that is readily detectible by a thorough and complete **clinical examination**.

4) **Coinsurance. Your** portion of the cost of insured **veterinary treatment for your pet** before any **deductible** is applied. **Your pet's coinsurance** amount is shown as "Your Share" on the **pet schedule** of the **declarations page**.

5) **Condition.** Any manifestations of **clinical symptoms** consistent with a diagnosis or diagnoses, regardless of the number of incidents or areas of the body affected.

6) **Coverage.** The insurance protection described in this **policy** form and on the **declarations page.**

7) **Coverage Term.** A twelve (12) month period that begins with the effective date of **coverage** and continues for each twelve (12) month period thereafter.

8) **Declarations Page.** A written document comprising part of this **policy**, which identifies the insured, the **policy** number, and the insured **pet schedule** with the **coverage** options selected and Lifetime Limit provided.

9) **Deductible.** The amount **you** must first pay with respect to the cost of insured **veterinary treatment** for **your pet** after **your pet's coinsurance** portion has been applied.

10) **Dental Health Care.** The regular care required to maintain dental hygiene for **your pet.** This includes brushing, scaling, polishing, extractions and reconstructions.

11) **Diagnostic Tests.** Tests used to determine the overall health of **your pet**. **Diagnostic tests** can be used as a way to detect certain abnormalities. It can also validate the current health of **your pet**, or help to evaluate an older **pet** more thoroughly before problems surface.

12) **Hospitalization.** Charges for boarding **your pet** at a veterinary clinic as required by your **veterinarian** to deliver nursing care, administer **medication** to or monitor **your pet**.

13) **Illness.** Sickness, disease and any changes to **your pet's** normal healthy state; any **condition** other than **your pet's** normal healthy state.

14) **Injury(ies).** Physical harm or damage to **your pet** arising from normal activity or an **accident**.

15) **Medically Necessary.** Medical services, supplies or treatments provided by a **veterinarian** to treat covered **pets** which are:

a. consistent with symptoms or diagnosis;

b. appropriate and meet generally accepted veterinary practice standards;

c. not primarily for the convenience of the **pet parent**, **your veterinarian** or other providers; and

d. consistent with the most appropriate supply or level of services which can safely be provided to the **pet**.

16) **Medication.** Any veterinary recommended **medications** prescribed by **your veterinarian** and approved by the Food and Drug Administration (FDA) for veterinary use.

17) **Neutering.** Orchidectomy, or surgical removal of the testicles.

18) **Pet** or **Pets.** A domestic cat or dog that is owned for companionship or as a help dog, not owned for commercial reasons. Commercial reasons include, but are not limited to, a **racing dog**.

19) **Pet Parent.** The owner of the **pet,** including owner's spouse or partner.

20) **Pet Policy Effective Date.** 12:01 a.m. of the day following the date you enroll **your pet**, as shown on the **pet schedule** of the **declarations page**, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

21) **Pet Schedule.** The table shown on the **declarations page** that identifies the **pet policy effective date**, policy number and **coverage** options related to a specific insured **pet.**

22) **Policy.** The terms and conditions and most recent **declarations page** that includes any endorsements that apply.

23) **Policy Effective Date.** 12:01 a.m. of the day following the date Shown in the Declarations, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

24) **Pre-existing conditions** means:

a. **illness** or the recurrence of any **illness** or **condition** which first occurred or displayed any signs and/or symptoms consistent with the stated **illness** or **condition** prior to the **pet policy effective date**;

b. an **injury** or recurrence of an **injury** that occurred prior to the **pet policy effective date**; or

c. any **condition** or complication resulting from an **illness** or **injury** that occurred prior to the **pet policy effective date.**

25) **Racing Dog.** A dog, which is owned and maintained for the purpose of competing in organized races or speed contests.

26) **Spaying.** Ovariohysterectomy, or resection of the ovaries and uterus.

27) **Supplies.** Any item that is **medically necessary**, as determined by the **veterinarian**, that is safe and effective for its intended use, and that omission would adversely affect the insured **pet**.

28) **Surgery (ies).** Procedure(s) that treat diseases or **injuries** by operative manual and instrumental treatment.

29) **Vaccination.** The administration of an industry-recognized commercial vaccine by a registered licensed **veterinarian**. The vaccine must be in accordance with the manufacturer's recommendations, following a complete **clinical examination,** for prevention of disease.

30) **Veterinarian.** A properly licensed and registered **veterinarian** in active practice in the area where **your pet** is treated or examined. **Veterinarian** shall not include **you** or a member of **your** immediate family.

31) **Veterinary Examinations Fees.** Fees charged for the professional opinion of a **veterinarian**. Also referred to as consultation, examination, referral, and recheck fees.

32) **Veterinary Treatment** means:

a. X-rays;

b. Laboratory and **diagnostic tests**;

c. **Medication**;

d. **Surgeries;**

e. **Supplies;**

f. **Hospitalization;**

g. Euthanasia; and

h. Nursing care;

provided by a licensed **veterinarian** and their staff under direct supervision.

33) **Working Pets.** Any **pet** involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or for other commercial use.

34) **Your Pet.** The dog or cat named in the **pet schedule** of the **declarations page**.

# EXHIBIT 3

CHUBB
healthypaws®
PET INSURANCE

**WESTCHESTER FIRE INSURANCE COMPANY**

# PET HEALTH INSURANCE POLICY

Please read your Pet Health Insurance Policy carefully to determine the parties' rights and duties and what is and is not covered. Some provisions in the policy limit or restrict coverage.

Throughout this policy, the words **you** and **your,** refer to the policyholder (**Pet Parent**) shown in the Declarations Page.

The words **we, us** and **our,** refer to the company providing this insurance.

Words and phrases that appear in **bold type** have special meaning found in Section V. Definitions.

## I. INSURING AGREEMENT

**We** rely on the statements **you** made in the application. Upon **your** payment of the premiums when due, **we** will provide **coverage** as specifically described in this **policy** for **your pet** as shown on the **declarations page**.

Benefits are subject to terms, conditions, limitations and exclusions of this **policy** and to **your** responsibility for the **coinsurance** and **deductible. Coverage** is in effect at the time and date shown on the **declarations page** subject to the waiting periods described in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.** and **1) d.**

1) **WE COVER**: Reimbursement of the cost incurred by **you** for **medically necessary veterinary treatment** recommended by **your veterinarian** for **conditions** covered by this **policy.** These costs will be covered when **your pet:**

   a. develops an **illness,** or

   b. has an **injury** as a result of an **accident;**

   during the **coverage term.**

   This **policy** shall not cover amounts charged by the treating veterinary clinic that are greater than the treating veterinary clinic's standard or published charges.

2) **LIFETIME LIMIT**: The maximum amount **you** may claim while **coverage** is in force with respect to any one **pet** for **veterinary treatment** over the lifetime of that **pet.** The Lifetime Limit is shown on the **declarations page**. Subject to the maximum lifetime limit, there are no limits per claim or per year.

3) **COINSURANCE**: The portion **you** are required to pay for **your pet's veterinary treatment. Your pet's coinsurance** amount is shown on the **pet schedule** of the **declarations page**.

4) **DEDUCTIBLE**: **Your pet's deductible** is shown on the **pet schedule** of the **declarations page. Your pet's deductible** shall apply once per **coverage term**.

5) **MONTHLY PREMIUM**: **Your** monthly premium is set forth on **your declarations page**. Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine. **We** will notify **you** at least sixty (60) days in advance of such change.

6) **CHANGES TO YOUR COVERAGE**: **Your coverage**, **coinsurance**, and **deductible** will not change due to **your pet's** claims experience.

## II. EXCLUSIONS & LIMITATIONS

1) **GENERAL EXCLUSIONS**

   **We** do not cover:

   a. **Veterinary examination fees**.

b. **Injury** from an **accident** that occurs within the first fifteen (15) days following the **pet policy effective date.**

c. **Illness** that occurs or recurs within the first fifteen (15) days following the **pet policy effective date**.

d. **Illness** related to hip dysplasia that occurs or recurs within the first twelve (12) months following the **pet policy effective date.**

e. Conditions or complications that result from **accidents** that occur or **illnesses** that develop or redevelop within the first fifteen (15) days following the **pet policy effective date.**

**2) PRE-EXISTING CONDITIONS**

**We** do not cover **pre-existing conditions.**

**3) PREVENTIVE CARE EXCLUSIONS**

**We** do not cover:

a. **Spaying** and **neutering**.

b. Preventive healthcare including **vaccinations** or titer test, flea control, heartworm **medication**, de-worming, nail trim, and grooming.

c. Parasite control including but not limited to internal and external parasites for which readily available prophylactic treatments are available.

d. **Dental health care**, however if injury to teeth is caused by an **accident**, **we** do cover the cost of extraction and/or reconstruction of damaged teeth.

e. Anal gland expression.

**4) OTHER EXCLUSIONS**

**We** do not reimburse the costs, fees or expenses associated with:

a. **Injury** or **illness** due to any intentional, neglectful or preventable act, including organized dog fighting, by **you** or a member of **your** household;

b. Elective procedures, cosmetic procedures, preventive procedures including but not limited to:

1. tail docking;
2. ear cropping;
3. de-clawing;
4. micro-chipping;
5. dew claw removal; or
6. ear cleaning;

c. Boarding or transport expenses;

d. **Conditions** arising from a specific activity if the same or a similar activity occurred prior to the **pet policy effective date** and displayed the propensity for the activity to recur and cause **injury** or **illness** to **your pet**;

e. Future treatment for **injury** or **conditions** of a leg when cruciate ligament problems to any other leg existing prior to the **pet policy effective date**, have been identified, regardless of whether or not the new signs or symptoms are related to such cruciate ligament problems;

f. Diseases preventable by vaccines and prophylactic **medications** (such as heartworm, lice, internal parasites and fleas);

g. Complications of **conditions** excluded or limited by this **policy**;

h. Abnormalities where **clinical symptoms** were apparent prior to the **pet policy effective date.** This includes **conditions** that are detectable by a routine physical exam by **your veterinarian**;

i. Claims in any way arising from the lack of use and/or implementation of preventive healthcare products and/or methods when such products and/or methods would be in accordance with generally accepted veterinary standards. Routine healthcare includes: **vaccinations**, flea control, heartworm **medication**, de-worming, dental care, ear plucking, grooming, and prudent regular care;

j. Special diets, foods, vitamins, grooming, nail trims, shampoo and bathing;

k. Any claim for loss from a nuclear incident as defined in the Nuclear Liability Act, nuclear explosion or contamination by radioactive material;

l. **Conditions** arising from any specific activity if the same or similar activity occurs after **you** have received written notice from **us** regarding the specific activity;

m. Experimental or investigational treatment or medicine;

n. Breeding or **conditions** relating to breeding, whelping, and queening;

o. **Diagnostic tests** for **conditions** excluded by this **policy**;

p. **Diagnostic tests** due to complications of **conditions** excluded or limited by this **policy**;

q. **Conditions** caused by war or war activities whether war be declared or not. War activities include civil war, insurrection, rebellion, or revolution or any act or **condition** incident of any of the foregoing;

r. Feeding, housing or exercise;

s. Training, therapy, **medications** or other methods or forms of behavioral modification;

t. Shipping or mailing costs unless associated with a covered compounded **medication** or **diagnostic tests.**

**5) LIMITATIONS**

a. A **pet** less than six (6) years of age on the date of enrollment must have undergone a complete **clinical examination.** The exam must have taken place either in the twelve (12) months prior to the **pet policy effective date**, or within fifteen (15) days following the **pet policy effective date.** A **pet** six (6) years of age or greater on the date of enrollment must have undergone a complete **clinical examination** within thirty (30) days prior to the **pet policy effective date,** or within fifteen (15) days following the **pet policy effective date. Your** failure to submit **your pet** to a complete **clinical examination** may void the **policy**. If the **policy** is voided, the **policy** premium will be refunded.

b. For **pets** six (6) years of age or greater on the date of enrollment, no **coverage** shall apply for **illness** related to hip dysplasia.

c. For **working pets**, no **coverage** shall apply for any **condition** resulting from activities related to racing, breeding, law enforcement, guarding or for any commercial use.

d. **We** will not make any payments for any claims for which **you** are entitled to be paid under any other insurance except for any additional sum which is payable over and above such other insurance.

**III. GENERAL CONDITIONS**

1) Premium is payable monthly by Direct Debit or by charge to **your** credit card, according to the option selected by **you** on the application. This **policy** is continued until cancelled, and will renew automatically each month as long as premium payments are current. When **you** have not paid the premium, **we** may cancel this **policy. We** will let **you** know at least twenty (20) days before the date cancellation takes effect. No coverage will be provided for any claim with a date of **veterinary treatment** between the premium due date and the cancellation date, unless the premium payments are current.

2) **You** may cancel **your policy** by notifying **us** in writing via regular mail, fax or email at least fourteen (14) days in advance of **your** next premium payment.

3) **You** must be the owner of each **pet** shown on the **pet schedule**. If the **pet** owner dies, becomes unable to care for any insured **pet**, or passes the ownership of any insured **pet**, the **coverage** will continue without interruption, if approved in writing by **us**, subject to all other terms and conditions of this **policy**.

4) A **pet** is covered under this **policy** only while the **pet** is in the United States of America, or temporarily away in Canada.

5) **You** must agree to implement all reasonable means possible in the care and protection of **your pet. You** further agree to protect **your pet** from aggravation or recurrence of the **injury** /or **illness**.

6) This **coverage** is not transferable to other **pets**. All new **pets** are subject to a new application and your monthly payment will increase.

7) **You** are entitled to increase the **deductible** or **coinsurance** amount applicable to **your pet** at any time. This request must be made in writing and will become effective the month following approval by **us. You** may apply to lower the deductible or **coinsurance** amount applicable to **your pet** provided you have not previously filed a claim with **us** for that **pet**. This request must be in writing and will become effective the month following approval by **us**.

8) Notice of loss must be given by either **you** or **your** agent.

9) The loss is payable within sixty days after completion of the claim form, unless applicable state law provides for a shorter period.

10) In order to process a claim, **you** must allow **us** to contact **your** present and previous **veterinarian(s)** and provide **us** with the necessary authority to obtain any information **we** may require. In the event information relating to the history of the **pet** is missing or incomplete, the claim will not be processed. **You** must also agree to submit the **pet** to examination, if **we** require, by a **veterinarian** selected by **us**.

11) In the event of any disagreement between **you** and **us** with regard to a claim, the matter will be referred to a **veterinarian** of **ours**. If the matter is not resolved, an independent third party **veterinarian** shall be appointed by **us**. This independent third party **veterinarian's** decision shall be final and binding on all parties.

12) Every action or proceeding against **us** for the recovery of any claim under or by virtue of this contract is absolutely barred unless commenced within one year after the loss or damage occurs or unless state law requires a longer period.

## IV. ADDITIONAL CONDITIONS

1) **MISREPRESENTATION AND FRAUD** – This **policy** will be voided if **you** have concealed or misrepresented any material fact or circumstance concerning this insurance or the **pet** covered. **We** do not provide **coverage**, for an insured who has intentionally concealed or misrepresented any such facts or circumstances before or after a loss.

2) **CANCELLATION**

   a. **We** may cancel this **policy** if **we** do not receive a monthly premium from **you** when the premium is due. In such a case a written notice will be sent to **you** at **your** last email address known to **us**. We will provide at least (20) days notice of our intent to cancel. The notice will be in accordance with the provisions of **III. GENERAL CONDITIONS** 1). Otherwise, **we** may cancel this policy by providing **you** at least ninety (90) days written notice.

   b. **You** may cancel this **policy** at any time by notifying **us** in writing via regular mail, fax or email. This is in accordance with the provisions of III. **GENERAL CONDITIONS** 2).

3) **STATE LAW** – When this **policy's** provisions are in conflict with the statutes of the state in which this **policy** is issued, the provisions are amended to conform to such statutes.

4) **ENTIRE CONTRACT** – This **policy**, the **declarations page**, and any attached endorsement constitutes the entire agreement between **you** and **us**.

5) **FREE LOOK PERIOD** - If **you** are not satisfied with this **policy** within thirty (30) days of the **Policy Effective Date**, **you** may cancel **your** insurance. **We** will refund **your** premium in full, as long as **you** have not submitted a claim.

## V. DEFINITIONS

The following defined words or phrases in the **policy** are printed in bold type and have the following meanings, unless a different meaning is described in a particular coverage or endorsement.

1) **Accident.** An unexpected and unintended event.
2) **Clinical Examination.** A thorough examination performed by a licensed and registered **veterinarian** encompassing all body systems of the **pet**. Examination can also be referred to as "full physical, physical consultation, full examination or veterinary examination."
3) **Clinical Symptoms.** Any manifested anomaly in, or deviation from the regular healthy state or function of a **pet**, including behavioral traits. **Clinical Symptoms** include any anomaly that is readily detectible by a thorough and complete **clinical examination**.
4) **Coinsurance. Your** portion of the cost of insured **veterinary treatment for your pet** before any **deductible** is applied. **Your pet's coinsurance** amount is shown as "Your Share" on the **pet schedule** of the **declarations page**.
5) **Condition.** Any manifestations of **clinical symptoms** consistent with a diagnosis or diagnoses, regardless of the number of such symptoms or areas of the body affected.
6) **Coverage.** The insurance protection described in this **policy** form and on the **declarations page.**
7) **Coverage Term.** A twelve (12) month period that begins with the effective date of **coverage** and continues for each twelve (12) month period thereafter.
8) **Declarations Page.** A written document comprising part of this **policy**, which identifies the insured, the **policy** number, and the insured **pet schedule** with the **coverage** options selected and Lifetime Limit provided.
9) **Deductible.** The amount **you** must first pay with respect to the cost of insured **veterinary treatment** for **your pet** after **your pet's coinsurance** portion has been applied.
10) **Dental Health Care.** The care required to maintain dental hygiene for **your pet.** This includes cleaning, brushing, scaling, polishing, extractions and reconstructions.
11) **Diagnostic Tests.** Tests used to determine the overall health of **your pet. Diagnostic tests** can be used as a way to detect certain abnormalities. It can also validate the current health of **your pet**, or help to evaluate an older **pet** more thoroughly before problems surface.
12) **Hospitalization.** Charges for boarding **your pet** at a veterinary clinic as required by your **veterinarian** to deliver nursing care, administer **medication** to or monitor **your pet.**
13) **Illness.** Sickness, disease or any other changes to **your pet's** normal healthy state; or any **condition** other than **your pet's** normal healthy state.
14) **Injury** or **Injuries.** Physical harm or damage to **your pet** arising from normal activity or an **accident.**
15) **Medically Necessary.** Medical services, supplies or treatments provided by a **veterinarian** to treat covered **pets** which are:
    a. consistent with symptoms or diagnosis;
    b. appropriate and meet generally accepted veterinary practice standards;
    c. not primarily for the convenience of the **pet parent**, **your veterinarian** or other providers; and
    d. consistent with the most appropriate supply or level of services which can safely be provided to the **pet**.
16) **Medication.** Any veterinary recommended **medications** prescribed by **your veterinarian** and approved by the Food and Drug Administration (FDA) for veterinary use.

17) **Neutering.** Orchiectomy, or surgical removal of the testicles.

18) **Pet** or **Pets.** A domestic cat or dog that is owned for companionship or as a help dog. **Pet** or **Pets** do not include a domestic cat or dog that is involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or commercial activities.

19) **Pet Parent.** The owner of the **pet,** including owner's spouse or partner.

20) **Pet Policy Effective Date.** 12:01 a.m. of the day following the date you enroll **your pet**, as shown on the **pet schedule** of the **declarations page**, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

21) **Pet Schedule.** The table shown on the **declarations page** that identifies the **pet policy effective date**, policy number and **coverage** options related to a specific insured **pet.**

22) **Policy.** The terms and conditions and most recent **declarations page** that includes any endorsements that apply.

23) **Policy Effective Date.** 12:01 a.m. of the day following the date Shown in the Declarations, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

24) **Pre-existing conditions** means:

    a. **Illness** or **condition** which developed or redeveloped prior to the **pet policy effective date**;

    b. an **injury,** or recurrence of an **injury,** as a result of an **accident** that occurred prior to the **pet policy effective date**; or

    c. any **condition** or complication resulting from an **illness** that developed, or any **injury** as a result of an **accident** that occurred prior to the **pet policy effective date.**

25) **Spaying.** Ovariohysterectomy, or resection of the ovaries and uterus.

26) **Supplies.** Any item that is **medically necessary**, as determined by the **veterinarian**, that is safe and effective for its intended use, and that omission would adversely affect the insured **pet.**

27) **Surgery** or **Surgeries.** Any procedure that treats diseases or **injuries** by operative manual and instrumental treatment.

28) **Vaccination.** The administration of an industry-recognized commercial vaccine by a registered licensed **veterinarian.** The vaccine must be in accordance with the manufacturer's recommendations, following a complete **clinical examination,** for prevention of disease.

29) **Veterinarian.** A properly licensed and registered **veterinarian** in active practice in the area where the **pet** is treated or examined. **Veterinarian** shall not include **you** or a member of **your** immediate family.

30) **Veterinary Examinations Fees.** Fees charged for the professional opinion of a **veterinarian.** Also referred to as consultation, examination, referral, and recheck fees.

31) **Veterinary Treatment** means:

    a. X-rays;

    b. Laboratory and **diagnostic tests**;

    c. **Medication**;

    d. **Surgeries;**

    e. **Supplies;**

    f. **Hospitalization;**

    g. Euthanasia; and

    h. Nursing care;

    provided by a licensed **veterinarian** and their staff under direct supervision.

32) **Waiting Periods.** 15 days from the **Pet Policy Effective Date** for **accidents** and **illness** and 12 months from the **Pet Policy Effective Date** for **illness** related to hip dysplasia.

33) **Working Pets.** Any **pet** involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or for other commercial use.

34) **Your Pet.** The dog or cat named in the **pet schedule** of the **declarations page**.